FITZIE McKAY ET AL. V. MARSHALL NATIONAL BANK.

Delivered June 26, 1897.

**Guardian and Ward—Action Against—Venue.**

Where bank stock belonging to the ward has been pledged by the guardian to secure the payment of a note, an action to foreclose the lien must be brought in the county in which the guardianship is pending, if it has not been actually closed, though the note is payable elsewhere, and though the ward has been released from disability for some years.

ERROR from Harrison. Tried below before Hon. W. J. GRAHAM.

*James Turner*, for plaintiffs in error.—The act of the guardians in making a note payable in Harrison County was illegal, null, and void, and did not give jurisdiction to the courts of Harrison County, either against the minor after her marriage or against the guardian before the marriage. Rev. Stats., art. 1194, sec. 5; Richardson v. Pruit, 3 Texas, 223; Neil v. Owens, 3 Texas, 145; Bondies v. Buford, 58 Texas, 266; Wilson v. Kyle, 35 Texas, 559; Finch v. Edmonson, 9 Texas, 510.

*T. P. Young*, for defendant in error.—Upon the marriage of Eugenia Epperson, the jurisdiction of the County Court of Marion County over her estate ceased, except for the purpose of final settlement. Rev. Stats. 1895, art. 2764, sec. 4; Carpenter v. Solomon, 4 Willson C. C., sec. 34.

FINLEY, ASSOCIATE JUSTICE.—This case was tried below on the following agreed statement of facts:

"Eugenia Epperson was a minor on and before January 1, 1894, and her guardians were H. McKay and his wife, Fitzie McKay, who were appointed by the County Court of Marion County, Texas, the said Fitzie McKay being the mother of said minor by a former marriage, and the estate of the minor was administered in Marion County, Texas, and the said minor married Henry D. Dickson, on August 5, 1894, and ever since her marriage she has lived with her husband in Red River County, Texas. Fitzie McKay since 1890, and now, is a resident citizen of Marion County, Texas. The residence of all the defendants was as above stated when this suit was filed.

"On the ———— day of January, 1890, H. and Fitzie McKay, as guardians of said Eugenia Epperson, filed in the County Court of Marion County, Texas, the following petition, to-wit:

" 'In the County Court of Marion County, Texas, February term, 1890. Guardianship of Eugenia Epperson. No. 539. In the matter of the guardianship of the person and estate of Eugenia Epperson, a minor. To the Hon. S. W. Mosely, county judge of Marion County, Texas:

" 'Your applicants, H. McKay and his wife, Fitzie McKay, both of said State and county, as guardians of the estate of Eugenia Epperson, minor, respectfully represent to your honor that no property of the estate of said minor has ever come to the hands of these guardians; that the whole estate of said minor consists of interest in real and personal property descended to her through her father, E. S. Epperson, from the estate of her grandfather, B. H. Epperson; that said minor is entitled to one-third of the residue of the estate of B. H. Epperson, subject to such lawful debts and liabilities against said estate of B. H. Epperson, against said property of said estate in the hands of the legatees of the will of B. H. Epperson; that all of said property is and probably will be involved in litigation before the same can be reduced to possession by their guardians and returned to this court by inventory.

" 'That belonging to said residue are many valuable tracts and parcels of land situate throughout the State and in Marion County and aggregating forty to sixty thousand acres of land, and all of which is clouded by adverse and counterclaims; that none of said lands and property can now be sold by reason of said clouds and incumbrances upon said title, and there is no money or fund of said minor coming from said estate with which to prosecute and protect the rights and interests of said minor.

" 'These applicants are advised and believe that they can in several instances by judicious compromise and settlement raise and realize enough from some of said lands to raise sufficient funds to pay the expenses of said guardianship and enable the guardians to institute and prosecute the necessary and proper legal proceedings to recover and establish said minor's interest in said property of said estate. These applicants are advised and believe that by the approval and recognition of this honorable court said guardians can by such terms as may be had with some of the

claimants to said lands, either by way of conditional sale or mortgage, or other safe and judicious transaction, raise sufficient funds and money for the purpose aforesaid, and that in several instances property and rights of said minor may be realized by judicious compromise, which could not. be realized by long and expensive litigation and without sufficient funds necessary to prosecute such litigation.

" 'Whereupon these applicants respectfully suggest and pray the court for an order authorizing them, in the exercise of a sound discretion, to compromise and compound with adverse claimants of said property upon such terms as may be for the greatest and best interest of said minor and her said estate, and to procure and raise a sufficient sum of money for the purpose aforesaid upon the property of said estate and said minor's interest in said residue upon the best and most beneficial terms attainable, and all to be reported to this honorable court for inspection and approbation. Otherwise and without this relief the interest and property interest of said minor will be greatly jeopardized, and may be finally lost. That there are suits now pending in the District Court of Marion, Red River, and Clay Counties in which this minor has large and valuable interest in lands, and which said suits and litigation now need and demand immediate attention. That this minor was made party defendant to said suits, and is compelled to appear and defend same, or judgment will go and be rendered against her, and she will thereby sustain great and irreparable loss, where, with proper attention to said suits and litigation, her rights and interest can and will be maintained and protected. Whereupon, these applicants pray for such order as aforesaid.

" 'H. McKay, Att'y for said Guardians.

" 'Filed Feb'y 3d, 1890.  W. F. Jones, Clerk.

" 'Approved Feb'y 8th, 1890, and ordered recorded.  S. W. Mosely.

" 'Recorded June 18, 1890.  W. F. Jones, Clerk, by G. M. Jones, Deputy.'

"The above duly certified as a true copy of the original by the clerk of the County Court of Marion County, Texas.

"On February 8, 1890, the court made the following order, to wit:

" 'Guardianship of Eugenia Epperson.  No. 539.  February 8, 1890.

" 'In this cause, on this the 8th day of February, 1890, in open court, came on to be heard the application of H. McKay and Mrs. Fitzie McKay, guardians of the person and estate of Eugenia Epperson, a minor, for an order of this honorable court allowing and empowering the said guardians to compound and compromise with adverse claimants of the property and effects of said minor, upon such terms as may be for the best and greatest interest of said minor and her said estate, in their sound discretion, and to procure and raise sufficient sums of money by mortgage upon or conditional sale of the property of said minor, and to hypothecate assets of said minor for the purpose of raising sufficient funds to pay the expenses of said guardianship, and to enable said guardians to institute and prosecute the necessary and proper legal proceedings to recover

and establish said minor's interest in said property and said estate. And the court, after hearing said application and the evidence adduced in support thereof, doth consider that the said application be and the same is in all things granted, and it is ordered and decreed by the court that the said guardians be and they are hereby empowered to compound and compromise in matters of said estate as herein recited and prayed for, and they be authorized and empowered to raise money and funds for the use of said minor and her said estate as hereinbefore recited and prayed for, and that their proceedings and actions in the premises be reported to this court for its inspection and consideration.'

"Which is duly certified as a copy of the original order of the court.

"S. W. Mosely, who made and approved the orders, was the county judge of Marion County at the time, and he approved the petition of the guardians in addition to making the order in court.

"On February 8, 1890, H. and Fitzie McKay, as guardians of said minor, borrowed from the Citizens' Bank of Jefferson, Marion County, Texas, $470.40, and gave a note signed by them as guardians, and due at ninety days, and to secure the note they delivered to said bank and pledged to it ten shares of stock, of the par value of $100 per share, in the State National Bank of Fort Worth, Texas, said stock being the property of said minor. This note was not paid at maturity, and the guardians did not report their action to the court for approval, and it was never approved by the court.

"Without having obtained any further order from the County Court of Marion County, said guardians on August 19, 1890, applied to the Marshall National Bank for money to take up the note to the Jefferson bank, and on that day the Marshall National Bank took up the note due the Citizens' Bank, and received from said bank the ten shares of stock that were pledged for its payment.

"Afterward, on August 19, 1891, the guardians renewed the note by giving to the Marshall National Bank another note, and including in the new note the sum of $185.25, money that the bank had advanced the guardians; and on August 19, 1892, the guardians again renewed by giving a new note, in which they included the sum of $136.18, money advanced to them by the bank. At each renewal the guardians pledged the ten shares of stock, then and now in the possession of the Marshall National Bank.

"The guardians did not apply to the County Court of Marion County for any further order or authority to borrow money on account of the minor, and none of the transactions with the Marshall bank were ever reported to or approved by said court, but the guardians acted under the order of February 8, 1890, and the bank loaned the money on that order.

"The note of August 19, 1892, is the one sued on, and is as follows:

" 'The Marshall National Bank, Marshall, Texas, August 19, 1892.

" 'Twelve months after date we promise to pay to the order of J. P. Alford, cashier, at the Marshall National Bank, in the city of Marshall,

Texas, the sum of seven hundred and ninety-one 83-100 dollars, for value received; negotiable and payable without defalcation or discount, with interest at the rate of 10 per cent per annum from maturity until paid. And if this note be not paid in full at maturity, and if suit be instituted to enforce collection of same, then we do hereby also agree to pay to the said J. P. Alford, cashier, 10 per centum on the amount of principal and interest of this note, due when said suit is instituted, to cover the expenses of said collection, which said 10 per centum shall be included in the judgment that may be rendered on this note.

" 'There is deposited as collateral security for the payment of this note ten shares of stock of State National Bank of Fort Worth, Texas, certificate No. 212.

" 'H. McKay,
" 'Mrs. Fitzie McKay,
" 'Guardians of Eugenia Epperson, minor.'

"At the date of the order, February 8, 1890, the Citizens' Bank of Jefferson, Texas, on the faith of said order, loaned to H. and Fitzie McKay, as guardians of Eugenia Epperson, a minor, $470.40, and took the note of the guardians as such, and on the same day, acting under said order, the said guardians delivered to the Citizens' Bank said ten shares of stock of the State National Bank of Fort Worth, Texas, evidenced by certificate No. 212, the face or par value being $100 per share. The guardians being unable to pay the note at maturity, the Marshall National Bank at the request of said guardians, on August 19, 1890, advanced the money and took up the note to the Citizens' Bank, and the note and the stock was by said bank transferred and delivered to the plaintiff, the Marshall National Bank, and the guardians still being unable to pay, afterward, on August 19, 1891, and on August 19, 1892, they renewed the note as hereinbefore set out, including in each renewal sums of money that the bank had loaned them in the meantime, as hereinbefore set out. At each renewal of the note the guardians again pledged said ten shares of stock, and as such guardians they pledged said stock for the full payment of the last note, given August 19, 1892, for $791.83. The note sued on has not been paid, in whole or in part, and the plaintiff bank still holds the certificate for the ten shares of stock.

"The minor, Eugenia, is the daughter of Mrs. Fitzie McKay by her first marriage. H. and Fitzie McKay were resident citizens of Marion County at and after their marriage, and were appointed guardians of said minor by the County Court of Marion County, Texas. H. McKay, one of the guardians, died at Jefferson, in the spring of 1894. The minor, Eugenia Epperson, was, on August 15, 1894, married to H. D. Dickson, a resident citizen of Red River County, Texas, and ever since her marriage she has resided with her husband in that county, and they were resident citizens of that county at the time this suit was begun, and never did reside in Harrison County. Mrs. Fitzie McKay was a resident citizen of Marion

County, Texas, at the time this suit was begun, and resides there now, and never did live in Harrison County, Texas.

"The plaintiff, the Marshall National Bank, can prove the following facts, which are agreed to, subject to the objection of the defendants as to its admissibility, the exceptions being hereafter stated, following this evidence, to wit:

"At the time the money was advanced by the plaintiff bank the guardians stated to the president and cashier that the court had made an order authorizing them to borrow money to prosecute suits in which said minor was interested; that they had borrowed some from the Citizens' Bank, but needed some more, and that the Citizens' Bank was unable to advance any more, and that they wanted the plaintiff bank to take up the note given by them to the Citizens' Bank, and to advance them some more money, and that, by authority of the order of the court, they would pledge the ten shares of bank stock for all sums advanced.

"At the time the renewals were made Mrs. Fitzie McKay told the president of the bank that the money then obtained was used and being used for the sole use and benefit of the minor, Eugenia, in the way of schooling, board, and clothing, and to prosecute suits in which she (the minor) had large interest. Mrs. McKay had just bought a lot of dry goods from the Green Flag Store, which she said she was going to send to Eugenia, and that neither Captain McKay nor herself had used or would use one cent of the money for their personal benefit. She again came to the bank and stated to the president and cashier that she wished to renew the note and get more money to pay for clothing and schooling for her child, and that the money obtained from the bank was for that purpose. She came back the third time, and wanted more money to pay for some clothing at the Green Flag Store that she had purchased, and they refused to let her have it; and she got angry and stated that she would take up the note and borrow from some one else. The money obtained at the time the notes were renewed they said was to pay parties for dry goods purchased at Marshall for the minor's clothing.

"The defendants H. D. Dickson and Eugenia E. Dickson object to the above evidence for the reason following, to wit:

"First. Because the evidence is irrelevant and altogether immaterial to any issue in this case, and only proves that the guardians made the statements, and does not prove that the money was used for the benefit of the minor.

"Second. Because the order of the court made February 8, 1890, did not contemplate a continual borrowing of money and pledging of the minor's property, and by its terms no transaction was valid without approval of the court; and the power to borrow was exhausted when the first sum was obtained, and that the plaintiff bank, in dealing with the guardians under the circumstances, did so at its own risk, and the ward is only liable on proof that the money was used for her benefit and that it was necessary, and the declaration of the guardian as to the purpose for which the money is obtained is not competent to prove that fact.

"Third. Because, under the law, no guardian can either create a liability against his ward, or renew an old one, without authority of court, and the offered evidence is the only reason given by the guardian for doing an illegal act."

*Opinion.*—The defendants attacked the jurisdiction of the court by exceptions and plea. It appears that neither of the defendants lived in the county where the suit was brought, and the jurisdiction was sustained upon the ground that the terms of the note sued upon made it payable in that county. In suits upon notes, ordinarily, it is not doubted that suit may be instituted and maintained in the county where the note is made payable. This is one of the exceptions in the venue statute. Rev. Stats., art. 1194, sec. 5.

If the suit was for the purpose of enforcing individual liability upon an obligation contracted to be performed in Harrison County, clearly the court would have had jurisdiction to enforce the contract against the obligors. But this is not the character of the suit. It is a suit against Fitzie McKay, guardian, and her ward, who had been relieved of disability by marriage; and the object of the suit was to foreclose a lien upon bank stock belonging to the estate of the ward, which had been pledged by the guardian to secure the payment of the note sued on, and no personal judgment was sought against either of the parties. It was shown that the guardianship was sued out in Marion County in 1890, was pending there when the note was executed, that the minor married in 1894, and that the guardianship matters had never been wound up and closed in Marion County.

Section 6 of article 1194, Revised Statutes, provides: "Where the suit is against an executor, administrator, or guardian, as such, to establish a money demand against the estate which he represents, * * * the suit must be brought in the county in which such estate is administered." This statute is mandatory, and if the probate court of Marion County still has jurisdiction of the estate in which it granted the guardianship, the court in Harrison County was without jurisdiction. Richardson v. Pruitt, 3 Texas, 232; Neil v. Owen, 3 Texas, 145; Bondies v. Buford, 58 Texas, 266.

Counsel for defendant in error urge that the probate court of Marion County ceased to have jurisdiction of the estate when the minor married, and that the venue provision in the note thereby became of force and effect. Article 2764, Revised Statutes, is cited in support of this position. This provision is to the effect that, when a female ward marries, the guardianship shall be immediately settled and closed and the guardian discharged. Subsequent articles direct fully as to the procedure of closing the administration, requiring a report from the guardian, showing fully the condition of the estate, etc.

Unquestionably, this guardianship should have been closed after the marriage of the minor, as soon as the proper proceedings could be had. But the directions of the statute were not observed, and the guardianship

was not closed. The matter of closing up the estate and discharging the guardians having been delayed for several years, has that court lost jurisdiction to wind up the estate, pass upon the accounts of the guardians, etc.? Unless that court can exercise such power, the guardianship can never be formally closed and the guardians and sureties discharged by judicial proceeding. Such a condition of things should not exist, and it is quite clear to us that it was never so intended, and that our statutory provisions should receive no such construction. The court which acquired jurisdiction of the estate retains that jurisdiction after the marriage of the female ward for all purposes necessary to a final closing of the administration. This being true, it had jurisdiction of the bank stock belonging to the ward's estate upon which the lien is sought to be foreclosed, had jurisdiction to pass upon the acts of the guardians in relation to the execution of the note and the pledging of the bank stock as security for its payment. The administration of the estate, under the guardians, could not be fully and correctly closed without judicial review of these very matters. Every reason which ever existed, as to this estate, for the statutory requirement that the guardians should be sued in the county where the estate was being administered, existed at the time this suit was brought. The order of court under which it is claimed the guardians acted in executing the note sued on did not attempt to give them authority to waive the statutory requirement as to venue of suits against them, and it may be seriously questioned whether the court could have conferred such authority.

Under the disposition which we shall make of this case, it would hardly be proper for us to discuss the merits of the case as they would appear in a court of proper jurisdiction; but we do feel authorized to say that the guardians had no authority to make such a contract with defendant in error as would justify the prosecution of this suit in Harrison County, the defendants residing respectively in Marion and Red River Counties, and the guardianship pending in Marion County. It is proper to say further, that Mrs. McKay being a married woman when she executed the note, by reason of this disability she was not bound by its terms; and Mrs. Eugenia Dickson not being a party to the note, is likewise free from its obligations.

The court erred in not dismissing this case, and its judgment is here reversed and the case dismissed.

*Reversed and dismissed.*